UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AHMAD SHREATEH,

        Plaintiff,

v.

FANNIE MAE and
MARK HOLMES,

        Defendants.

Civ. A. No. 04 11713-NMG

DEFENDANT FANNIE MAE'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS ALL COUNTS OF THE PLAINTIFF'S AMENDED COMPLAINT AS AGAINST FANNIE MAE

Pursuant to Fed. R. Civ. P. 12(b)(6), defendant Fannie Mae[1] moves this Court to dismiss all Counts of plaintiff Ahmad Shreateh's (the "Plaintiff") Amended Complaint as against Fannie Mae (Counts I and II) because he has failed to state legally cognizable claims under either 42 U.S.C. § 1981 ("§ 1981") or 42 U.S.C. § 1983 ("§ 1983").[2]

**SUMMARY OF ALLEGATIONS**

In or about May 2001, Plaintiff was hired by a company called Computer Merchants, to perform computer consulting work for one of Computer Merchant's clients, Compaq Computer. Amended Complaint ¶ 5. Pursuant to an agreement between Compaq and Fannie Mae, Plaintiff was sent to Fannie Mae to perform certain computer consulting work. Amended Complaint ¶¶ 6, 7. Plaintiff was at all times an *independent*

---

[1] Fannie Mae is chartered as the Federal National Mortgage Association, but does business under the name Fannie Mae. For ease of reference, the name Fannie Mae is used herein.
[2] Mark Holmes has not been served as a defendant in this lawsuit. On December 13, 2004, Plaintiff filed a voluntary stipulation of dismissal of all claims against Mr. Holmes.

- 1 -

*contractor*, and at all times received his compensation from Computer Merchants. Amended Complaint ¶ 8.

Plaintiff alleges that during his assignment[3] at Fannie Mae, Mark Holmes, a Fannie Mae employee who supervised the group Plaintiff was performing consulting services for, engaged in various inappropriate conduct toward Plaintiff, culminating in the termination of Plaintiff's assignment at Fannie Mae. Amended Complaint ¶¶ 14, 16-40. Specifically, Plaintiff alleges that Mr. Holmes made inappropriate sexual overtures toward him, and made several derogatory remarks about Plaintiff's national origin. Amended Complaint ¶¶ 16-40. Plaintiff alleges that as a result of Mr. Holmes' actions, his assignment with Fannie Mae ended in October 2001, although he does not allege that his employment with Computer Merchants ended at that time. Amended Complaint ¶ 38. Plaintiff further alleges that Mr. Holmes improperly stopped him from obtaining other consulting work at Fannie Mae. Amended Complaint ¶¶ 41-44.

## ARGUMENT

I. **Standard of Review.**

While for purposes of a motion to dismiss, a court must accept as true all of the plaintiff's well-pleaded allegations, a complaint shall be dismissed when it appears that plaintiff cannot recover under any set of facts consistent with his allegations. See Fed. R. Civ. P. 12(b)(6); Meara v. Bennett, 27 F. Supp. 2d 288, 289 (D. Mass. 1998); Chatman v. Dental Care Ctr., 973 F. Supp. 228, 232. (D. Mass. 1997). Therefore, if a complaint presents a set of facts that would not entitle the plaintiff to relief, a motion to dismiss must be allowed. See Conley v. Gibson, 355 U.S. 41, 45-48 (1957); Abany v. Fridovich,

---

[3] Although Plaintiff occasionally uses the words "employment" to describe his assignment at Fannie Mae, he has no where alleged that he was an employee of any entity other than Computer Merchants, or that he had anything other than an independent contractor relationship with Fannie Mae.

862 F. Supp. 615, 620 (D. Mass. 1994). Moreover, "empirically unverifiable conclusions, not logically compelled, or at least supported by the stated facts deserve no deference." See Sea Shore Corp. v. Sullivan, Jr., 158 F.3d 51, 54 (1st Cir. 1998) (internal citations and quotations omitted). All Counts of Plaintiff's Amended Complaint against Fannie Mae must be dismissed as failing to state a claim.

II.  **Count I (Civil Rights, Plaintiff Versus Fannie Mae, 42 U.S.C. § 1981) Fails to State a Claim Under Which Relief Can Be Granted And Must Be Dismissed.**

A.  The Plaintiff Cannot State A Claim Under 42 U.S.C. § 1981.[4]

The First Circuit requires a contractual relationship between the parties to the lawsuit before relief may be granted under 42 U.S.C. § 1981 and consequently, employees of an independent contractor which has contracted to provide services to the defendant-client company do not meet this requirement unless they too have a contract with the defendant-client company.[5] Danco, Inc. v. Wal-Mart Stores, Inc., 178 F.3d 8, 14 (1st Cir. 1999) (stating that §1981 does not provide a personal claim "to one who is merely affiliated – as an owner or employee – with a contracting party that is discriminated against by the company that made the contract"). Additionally, as the Danco court explained, "work-site racial discrimination against Danco's employees could amount to racial discrimination against Danco causing damage to the company, [b]ut the employee cannot collect damages on his own behalf." Id. (allowing the jury verdict stand, nevertheless, because Wal-Mart did not raise the issue of the owner not having a contract with Wal-Mart, and therefore not having a claim under § 1981); see Bellows v.

---

[4] The Plaintiff also makes reference to the First and Fourteenth Amendments. As explained *infra*, because Fannie Mae was not acting under color of state or federal law, Plaintiff has no cognizable First or Fourteenth Amendment claims.

[5] 42 U.S.C. § 1981 gives all persons the same right to make and enforce contracts. See 42 U.S.C. § 1981(a). The statute further defines "make and enforce contracts" to include making contracts and "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." See 42 U.S.C. § 1981(b).

Amoco Oil Co., 118 F.3d 268, 277 (5th Cir. 1997) (holding that the plaintiff did not state a cause of action under § 1981 because the loss suffered due to the work lost by the individual was the same as the work the corporation lost)[6]; Gersman v. Group Health Ass'n, 931 F.2d 1565 (D.C. Cir. 1991), *vacated on other grounds*; 502 U.S. 1068 (1992), *aff'd on remand*, 975 F.2d 886 (D.C. Cir. 1992) (holding that the plaintiff's corporation, not its principal individually, had "standing because it suffered the alleged injury, as it was [the Corporation] that had been party to the contractual relationship with [the defendant]")[7]; Perez v. Abbott Labs., No. 94 C 4127, 1995 WL 86716, at *13-16 (N.D. Ill. Feb. 27, 1995) (holding that the plaintiff has no standing to sue because there is no contractual relationship between the sole shareholder of the corporation party to the relationship at issue and the defendant) (attached hereto as Exhibit ("Ex.") A).[8]

Like the Danco case, the Plaintiff here does not have any contractual relationship with the defendant, Fannie Mae. The Plaintiff is an employee of Computer Merchants, which in turn contracted with Compaq Computer ("Compaq") for the Plaintiff's services. Amended Complaint ¶ 5. Thereafter, Compaq contracted with Fannie Mae and the Plaintiff performed such work as required under the contract between Fannie Mae and

---

[6] The Court explained that even if the plaintiff had an individual cause of action under § 1981, which it doubted that he did, the plaintiff was not able to recover because there was no evidence that Amoco interfered with his contractual rights, if there were any, with his corporation. Bellows, 118 F.3d at 274-75 (stating that in order to demonstrate a claim under § 1981 the plaintiff must show that (i) he is in a racial minority, (2) the defendant intentionally discriminated against him based on his race and (iii) the discrimination regarded one of the activities listed in the statute).

[7] Decisions outside of the First Circuit come to the same conclusion as reached in Danco, but they arrive at this result by analyzing whether the plaintiff has standing to sue under §1981 rather than whether the Plaintiff has stated a claim. Regardless of whether the Court analyzes this case as a failure to state a claim or that the Plaintiff does not have standing to sue under §1981, the same conclusion is reached -- the claim must be dismissed.

[8] Cf. Guides, Ltd. v. Yarmouth Group Prop. Mgmt., Inc., 295 F.3d 1065, 1071-73 (10th Cir. 2002) (stating that the corporation's sole shareholder did not have standing sue because the violation of her contract rights was no different from the corporation's claimed violations); Des Vergnes v. Seekonk Water Dist., 601 F.2d 9, 16 (1st Cir. 1979), *vacated on other grounds*; Seekonk Water Dist. v. Heritage Homes Inc., 454 U.S. 807 (1981) (sole stockholder did not have standing to sue under § 1981).

Compaq. Amended Complaint ¶¶ 6-7, 9. As such, Plaintiff is twice-removed from any contractual relationship with Fannie Mae. Further supporting the lack of a contractual (or employment) relationship between Fannie Mae and the Plaintiff is the fact that Computer Merchants, not Fannie Mae, always paid the Plaintiff for his services. Amended Complaint ¶ 8. The only contractual relationships present in this case are the ones between Fannie Mae and Compaq and the one between Compaq and Computer Merchants. See Amended Complaint ¶¶ 5-8. The Plaintiff was always an employee of Computer Merchants and was not a party to any of these contracts. See Amended Complaint ¶ 5. Therefore, all of the Plaintiff's claims under § 1981 must be dismissed as a matter of law because of the lack of a contractual arrangement between the Plaintiff and Fannie Mae.

      B.      Plaintiff's Religious and Sex Discrimination Claims Under 42 U.S.C. § 1981 Must Be Dismissed For Failure To State A Claim.

Even if the Court determines that the Plaintiff has standing to sue under 42 U.S.C. § 1981, the Plaintiff's allegations of religious and sexual discrimination are not cognizable under 42 U.S.C. § 1981. While the Civil Rights Act of 1866, 42 U.S.C. § 1981 "prohibits racial discrimination in the making and enforcement of private contracts," it does not provide relief for claims of religious or sexual discrimination. Runyon v. McCrary, 427 U.S. 160, 169 (1976) (stating, *in dicta*, that 42 U.S.C. § 1981 is in no way addressed to questions of possible sex and religious discrimination); Turner v. Unification Church, 473 F. Supp. 367, 372 (D.R.I. 1978) (dismissing the plaintiff's § 1981 religious discrimination claims because under § 1981, relief is limited to claims of racial discrimination), *aff'd*, 602 F.2d 458 (1st Cir. 1979); Ballantine v. Children's Hosp., No. 77-3411-MC, 1980 WL 296, at *3-4 (D. Mass. Oct. 9, 1980) (dismissing § 1981

claims because "allegations of sex discrimination are not actionable under 42 U.S.C. § 1981"); (attached hereto as Ex. B); see also Pennington v. City of Huntsville, 261 F.3d 1262, 1265 (11th Cir. 2001) (holding that under § 1981 a retaliation claim cannot be based on religion); Bratton v. Roadway Package Sys. Inc., 77 F.3d 168, 177 (7th Cir. 1996) (holding that "§ 1981 does not provide a cause of action for sex discrimination claims"); Bobo v. ITT, Cont'l Baking Co., 662 F.2d 340, 345 (5th Cir. 1981) (holding that "sex discrimination is not cognizable under § 1981"); Manzanares v. Safeway Stores, Inc., 593 F.2d 968, 971 (10th Cir. 1979) (stating that § 1981 does not apply to sex or religious discrimination claims); DeGraffenreid v. Gen. Motors Assembly Div., 558 F.2d 480, 486 (8th Cir. 1977) (holding that "sex discrimination is not cognizable under § 1981"). Therefore, to the extent that the Plaintiff claims he was discriminated against based upon religion and/or sex, these claims must be dismissed under 42 U.S.C. § 1981.

III. **Count II (Civil Rights, Plaintiff Versus Fannie Mae, 42 U.S.C. § 1983) Fails to State a Claim Under Which Relief Can Be Granted And Must Be Dismissed.**

    A.    <u>Plaintiff Cannot State A Claim Under 42 U.S.C. § 1983 Because He Has Not Alleged State Action.</u>

In order to state a claim under § 1983[9], a plaintiff must establish (1) that the action occurred under color of state law and (2) that the action is a deprivation of a constitutional right or a federal statutory right. See Parratt v. Taylor, 451 U.S. 527, 535 (1981); Rockwell v. Cape Cod Hosp., 26 F.3d 254, 256 (1st Cir. 1994); Storlazzi v. Bakey, 894 F. Supp. 494, 500 (D. Mass. 1995). Plaintiff alleges that he is a protected person under § 1983, and cryptically states that "he has acted under a cognizable claim

---

[9] 42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…" 42 U.S.C. §1983.

- 6 -

under § 1983." See Amended Complaint ¶¶ 54, 55.  Plaintiff also seems to identify his rights under the First and Fourteenth Amendments as the rights he has been allegedly deprived of through Fannie Mae's actions.  See Amended Complaint ¶ 52 ("This action is brought pursuant to U.S.C., Sec. 1983, the First and Fourteenth Amendment to the United States Constitution").

Not only have courts routinely found Fannie Mae and similar entities to be private actors[10], but Plaintiff does not provide any allegations upon which this Court could find that Fannie Mae acted under color of state law.  Instead, Plaintiff alleges only that Fannie Mae ratified and allowed Mark Holmes to act under color of law.[11]  Such conclusory allegations are insufficient to state a claim under § 1983.[12]  See Tauvar v. Bar Harbor Congregation of the Jehovah's Witnesses, Inc., 633 F. Supp. 741, 747 (D.Me. 1985), affirmed 787 F.2d 579 (1st Cir. 1986).

It is axiomatic that § 1983 does not apply to private actors.  See Rodriquez-Garcia v. Davila, 904 F.2d 90, 95 (1st Cir. 1990); Forbes, 923 F. Supp. at 231.  As such, in order to show that Fannie Mae acted under color of state law, Plaintiff must show either that Fannie Mae is a direct state actor, or that it should be treated as an indirect state actor, by virtue of its involvement with a state actor.  See Barrios-Velazquez v. Asociacion de Empleados Del Estado Libre Asociado De Puerto Rico 84 F.3d 487, 491-492 (1st Cir. 1996); Heinrich v. Sweet, 62 F. Supp. 2d 282, 309 (D. Mass. 1999); Perkins v.

---

[10] See infra at 9-10.

[11] Specifically, Plaintiff alleges, in conclusory fashion that "Defendant Fannie Mae was reasonably involved in ratifying and allowing its employee and supervisor Mark Holmes to act under color of law over the Plaintiff's contract of employment, by termination interference with the contract by threat, intimidation and coercion utilizing unlawful discriminatory methods based solely on sex, race and religion, rather than job performance and skill."  Amended Complaint ¶ 56.

[12] Even if Plaintiff could otherwise state a § 1983 claim, his claims against Fannie Mae would fail because the doctrines of respondent superior and vicarious liability do not apply to §1983 claims.  See Rockwell, 26 F.3d at 257; Beverly C. v. Hampstead Outlook, Inc., No. C-93-307-L, 1994 WL 421103, *3 (D.N.H. Aug. 11, 1994) (attached hereto as Ex. C).

Londonderry Basketball Club, 196 F.3d 13, 18 (1st Cir. 1999). Plaintiff nowhere alleges that Fannie Mae is a state actor (nor could he), merely noting that Fannie Mae "is a corporation doing business in Washington, District of Columbia." Amended Complaint ¶ 2. See Humpherys v. Nager, 962 F. Supp. 347, 351-352 (E.D.N.Y. 1997) (granting motion to dismiss for failure to state a claim, based upon finding that the "complaint fails to allege any conduct on the part of Freddie Mac (or any of the private parties) that could allow an inference that Freddie Mac (or any of the private parties) acted in a manner that could suggest that they were state actors"); Ponce v. Basketball Fed'n, 760 F.2d 375, 377 (1st Cir. 1985).

Although not mentioned in the Amended Complaint, in Plaintiff's Civil Action Cover Sheet filed in connection with the Amended Complaint, he lists Fannie Mae as being "chartered in" another state.[13] To the extent Plaintiff relies upon Fannie Mae's status as a federally chartered corporation as grounds for an assertion that Fannie Mae is a state actor, this argument would fail. A § 1983 claim cannot be based upon an entity's ties with the federal government -- it applies only to state government actors. See Morse v. North Coast Opportunities, Inc., 118 F.3d 1338, 1343 (9th Cir. 1997) ("[B]y its very terms, § 1983 precludes liability in federal government actors."); Hall v. Mueller, 84 Fed. Appx. 814, 2003 WL 22977904 (9th Cir. Dec. 16, 2003) (Fourteenth Amendment and Section 1983 claims were properly dismissed because those provisions do not apply to federal government actors) (attached hereto as Ex. D); see also, San Francisco Arts and Athletics, Inc. v. United States Olympic Comm., 483 U.S. 522, 542, n.21 (1987).

---

[13] Fannie Mae's status as a federally chartered entity, not controlled by the federal government; and its role as a *private* corporation in the secondary market for residential mortgages, are established by statute. 12 U.S.C. § 1716, et. seq. To the extent necessary, these facts are subject to judicial notice by this Court. See Fed. R. Evid. 201; Colonial Mortgage Bankers Corp., 34 F.3d 12, 15-16 (1st Cir. 2003).

Because Plaintiff has failed to, and cannot, allege state action by Fannie Mae, his § 1983 claim must be dismissed.

> B. **Plaintiff Cannot State A Claim Under Any Constitutional Theory Because He Cannot Show That Fannie Mae Was A Government Actor.**
>
>> 1. **Fannie Mae's Status as A Federally Chartered Corporation Is Insufficient to Support A Finding That It Is A Direct Federal Government Actor.**

Even if Plaintiff's Amended Complaint could be read as alleging a cause of action against Fannie Mae based upon a constitutional provision applicable to the federal government, it is well established that the fact that Congress granted a corporate charter to an entity does not render that entity a government agent. See San Francisco Arts and Athletics, Inc., 483 U.S. at 543-544 (the United States Olympic Committee did not lose its essentially private character by virtue of having been charted by Congress); Stearns v. Veterans of Foreign Wars, 394 F.Supp. 138 (D.D.C. 1975) (VFW was not a government action despite the fact that it was a corporation created and chartered by Act of Congress); King v. Little League Baseball, Inc., 505 F.2d 264, 267 (6th Cir. 1974) ("[w]hile it is true that the defendant national organization was incorporated by act of Congress, it was not by reason thereof a public agency, any more than its corporate actions would have been deemed state action, had it been incorporated under state law").

Moreover, several cases have addressed Fannie Mae's status, and have expressly found it to be a private, rather than public actor for constitutional purposes. See Roberts v. Cameron-Brown Co., 556 F.2d 356, 359 (5th Cir. 1977) (finding that, although regulated by the federal government, Fannie Mae is essentially a privately owned mortgage broker, and noting that "[i]n 1968, Congress specifically disassociated [Fannie Mae] from its previous government ownership and transferred it to private ownership");

Northrip v. Federal Nat. Mortgage Ass'n., 527 F.2d 23, 31-32 (6th Cir. 1975) (Fannie Mae did not become government actor by virtue of being a federally chartered corporation, or the accompanying obligation); First Nat. Mortgage Ass'n. v. Scott, 548 S.W. 2d 545, 549 (S. Ct. Mo. 1977).[14]

### 2. Fannie Mae Is Not An Indirect Government Actor.

In the First Circuit, three tests are applied to determine whether a private actor may be considered a state actor for constitutional[15] purposes: (1) the nexus test; (2) the public function test; and (3) the symbiotic relationship test. See Gerena v. Puerto Rico Legal Serv., Inc., 697 F.2d at 449-451; Ponce 760 F.2d at 377-378; 381-382; Barrios-Valazquez, 84 F.3d 987 at 493; Brown v. Newberger, 291 F.3d 89 (1st Cir. 2002).[16]

#### (a) The Nexus Analysis.

"Under the nexus analysis, [the government] can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." See Ponce, 760 F.2d at 377-378 (finding no evidence that government encouraged or induced private actor's conduct). The key factor is which entity made the

---

[14] See also Frank v. Bear Stearns & Co., 128 F.3d 919 (5th Cir. 1997) (breach of contract claim not governed by federal common law by virtue of Fannie Mae's status as federally chartered corporation, where Fannie Mae is a shareholder-owned corporation in which the federal government has no ownership interests); Liberty Mortgage Banking Ltd v. Federal Home Loan Mortgage Corp., 822 F. Supp. 956, 959 (E.D.N.Y. 1993) (holding that Freddie Mac, despite its federal charter, was not a federal actor, noting that "the federal courts have uniformly held that Fannie Mae and the Government National Mortgage Association ("Ginnie Mae"), two closely analogous GSE's are not engaged in state action when they engage in various activities").

[15] Actions under color of state law under §1983, as well as state actor status under the Fourteenth Amendment and government actor status under the Constitutional Amendments applicable to the federal government all are analyzed under these same three tests. See Gerena v. Puerto Rico Legal Serv., Inc., 697 F.2d at 447, 449 (1st Cir. 1983); Forbes v. Rhode Island Bhd. of Cor. Officers, 923 F. Supp. 315, 321 (D.R.I. 1996); San Francisco Arts and Athletics, Inc., 483 U.S. at 542.

[16] Certain First Circuit cases refer to the nexus test as the "compulsion" test, and the symbiotic relationship test as the "nexus/joint action" test, although the underlying analyses are essentially the same. See Rockwell v. Cape Cod Hosp., 26 F.3d 254, 257 (1st Cir. 1994).

decision being challenged – here, to terminate Plaintiff's assignment with Fannie Mae. See Missert v. Trustees of Boston Univ., 73 F. Supp. 2d 68, 72 (D. Mass 1999) (dismissing § 1983 claim by dentistry student who was terminated from educational program, finding that the termination decision was not made by, affirmatively mandated or governed by a federal entity or law); Perkins, 196 F.3d at 20 (the proper focus is on the challenged conduct, not the broader relationship between the state and the private actor). Here there is no statute which either required or encouraged Fannie Mae with respect to the termination of Plaintiff's assignment, and Plaintiff alleges no governmental involvement in the decision. As such, Plaintiff cannot establish that Fannie Mae was a government actor under the nexus analysis. See Brown, 291 F.3d at 93 (affirming dismissal of § 1983 claims); Tynecki v. Tufts Univ. School of Dental Med., 875 F. Supp. 26, 31 (D. Mass. 1994) (dismissing complaint, and finding plaintiff failed to meet nexus test, holding that "state action exists only if the Dental School's private decision to expel [plaintiff] was the product of either government coercion or significant encouragement").

(b)   The Public Function Analysis.

In order to satisfy the public function test, Plaintiff must establish that Fannie Mae was performing a function traditionally and exclusively reserved to the state. See Ponce, 760 F.2d at 381, *citing* Rendell-Baker v. Kohn, U.S. at 842; Missert, 73 F. Supp. 2d at 72. Mortgage services are not the type of functions exclusively reserved to the state. See American Bankers Mortgage Corp. v. Federal Home Loan Mortgage Corp., 75 F.3d 1401, 1410 (9th Cir. 1996) ("The powers exercised by Freddie Mac in participating in the secondary market for mortgages … hardly qualify as 'powers' traditionally associated with sovereignty") (citing Jackson 419 U.S. at 353); see also Northrip, 527 F.2d at 32 (noting that Fannie Mae was dissociated from government ownership, and made private

because it was not appropriate for the government to be involved in the operation of a secondary mortgage market). As such, Plaintiff's allegations fail to establish government action under the public function analysis.

(c)  The Symbiotic Relationship Analysis.

Under the symbiotic relationship test, Fannie Mae's actions only can be considered government action if "the government has so far insinuated itself into a position of interdependence with [Fannie Mae] that it must be recognized as a joint participant in the challenged action." See Burton v. Wilmington Parking Auth., 365 U.S. 715 (1961). The "key factor in determining the existence of a symbiotic relationship is whether the state profited from the discriminatory activity." See Ponce, 760 F.2d at 382, *citing* Rendell-Baker v. Kohn, 457 U.S. at 843. Here, Plaintiff has not alleged, and cannot allege any governmental benefit as a result of the termination of Plaintiff's assignment with Fannie Mae. Plaintiff also cannot establish that Fannie Mae is not independent in its day-to-day activities, given that it is a private corporation run by a board of directors, the majority of which are not government appointed. See 12 U.S.C. §1723(b); Perkins, 196 F.3d at 21; Barrios-Velazquez, 84 F.3d at 494 (citing Ponce, 760 F.2d at 381) (finding plaintiff failed to establish state action under the symbiotic relationship analysis where plaintiff did not contest the proposition that the defendant was essentially independent in the conduct of its daily affairs); Gerena, 697 F.2d at 451 (finding no symbiotic relationship, and noting that the government had taken affirmative steps to ensure autonomous operation by the defendant). Even extensive regulation and receipt of funds are not sufficient to establish the necessary nexus. See Beverly, 1994 WL 421103, at *2; Roberts v. Cameron-Brown Co., 556 F.2d at 359 (regulations and

obligations placed upon Fannie Mae by the federal government did not establish such interdependence as to make Fannie Mae's actions the actions of the federal government).

Because Plaintiff has provided no basis from which the Court could conclude that Fannie Mae acted, directly or indirectly, under color of law (either state or federal) in connection with the decision to terminate his assignment with Fannie Mae, Count II must be dismissed for failure to state a claim. See Gerena, 697 F.2d at 452; Messert, 73 F. Supp. 2d at 71; Tynecki, 875 F. Supp. at 30. Rockwell 26 F.3d at 257, 260 (affirming dismissal of § 1983 claim where plaintiff failed to allege sufficient facts to support a finding of action under color of state law).

IV.   **CONCLUSION**

For the foregoing reasons, Defendant Fannie Mae respectfully requests that this Court grant its Motion to Dismiss all Counts of Plaintiff's Amended Complaint As Against Fannie Mae (Counts I and II).

        FANNIE MAE
        By its attorneys,


        /s/ C. Tama Donovan
        Neil Jacobs  (BBO #249300)
        C. Tama Donovan (BBO #641292)
        Wilmer Cutler Pickering Hale and Dorr LLP
        60 State Street
        Boston, Massachusetts 02109
        (617) 526-6000

Dated:  December 22, 2004