## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AHMAD SHREATEH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. |
| | ) 04-11713-NMG |
| FANNIE MAE and | ) |
| MARK HOLMES, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

### MEMORANDUM & ORDER

**GORTON, J.**

Before this Court are several motions related to the
complaint of Ahmad Shreateh ("Shreateh") against defendants
Fannie Mae and Mark Holmes ("Holmes"). Shreateh has filed a
Motion to Amend his First Amended Complaint and a Motion to
Voluntarily Dismiss all counts of his complaint which name Holmes
as a defendant. Fannie Mae, now the official name of the
organization formerly and formally known as the Federal National
Mortgage Association, has submitted a Motion to Dismiss all
counts of the complaint against it and opposes Shreateh's motion
to amend his First Amended Complaint.

-1-

## I.   **Background**

### A.   **Facts**

This action arises from an alleged pattern of discriminatory and harassing behavior to which Shreateh says he was subjected while providing computer consulting services to Fannie Mae, under the direct supervision of Holmes.

Shreateh, a Jordanian-born, American citizen who identifies himself as a Muslim, began his employment with Fannie Mae on or about July 30, 2001. He was placed with Fannie Mae through another corporation, Computer Merchants of Norwood, Massachusetts. Computer Merchants hired Shreateh to perform computer services for one of its clients, Compaq. Fannie Mae and Compaq, in turn, had an agreement whereby Compaq provided computer services to Fannie Mae and Shreateh was assigned to Fannie Mae pursuant to that agreement.

Approximately one month after Shreateh's employment with Fannie Mae commenced, he was allegedly approached by Holmes who invited Shreateh to socialize with him and his boyfriend. Shreateh perceived this as an invitation to participate in what was to be "more than just a social get-together among friends." Shreateh rejected the offer and was walking away when Holmes took Shreateh's hand and said, "We mostly invite some other men for fun." Shreateh informed Holmes that he was not gay and left the room.

Shreateh traveled to Jordan to visit relatives between

-2-

September 3, 2001, and September 17, 2001. When he returned to work at Fannie Mae after his trip, Shreateh was asked by Holmes to come to his office. Holmes asked Shreateh what he thought of the events of September 11, 2001 and Shreateh responded that the hijackers responsible for those acts had been crazy, fanatical people. According to the First Amended Complaint, Holmes proceeded to make a number of disparaging comments about Middle Easterners, at which point Shreateh walked out of the room. The complaint further alleges that similar comments were made to Shreateh by Holmes on subsequent occasions and in the presence of a co-worker.

According to Shreateh's allegations, Holmes made what Shreateh considered to be a second sexual advance toward him at the end of September, 2001. On this occasion, Holmes allegedly asked Shreateh if he was interested in meeting him and his boyfriend at their home and stated that they invited other men for gay activities. Shreateh asserts that he told Holmes once again that he was not gay and requested that he stop making such advances. Holmes allegedly responded that it was in Shreateh's best interest to meet with him and his boyfriend if Shreateh wanted to continue to work at Fannie Mae. Shreateh maintains that he refused Holmes' invitation once more and made clear that he would accept the consequences of his refusal.

Following that meeting, Shreateh informed two Fannie Mae managers and two Compaq managers about the problems he had been

having with Holmes. The two Compaq managers referred Shreateh to the Fannie Mae managers who told him to try to deal with Holmes directly to solve the problem.

On or about October 17, 2001, Shreateh was summoned into Holmes' office where Holmes and an unidentified person informed him that his employment with Fannie Mae was being terminated effective October 19, 2001. When he inquired as to why he was being terminated, he was informed that the termination had nothing to do with his qualifications or job performance but that he was being terminated because he was an Arab and he "did not play the game right with [Holmes]."

Immediately thereafter, Shreateh contacted, and arranged several meetings with, other managers at Fannie Mae in an attempt to find a different position within the corporation. He contends that when Holmes learned of those inquiries, he ordered Shreateh to turn in his badge, thereby making it impossible for him to attend the meetings he had arranged. Holmes also allegedly ordered Shreateh to leave the building immediately and yelled, "I do not want you in Fannie Mae" as Shreateh left the building.

Following that encounter with Holmes, Shreateh was contacted by a senior manager from Fannie Mae who asked Shreateh whether he would be interested in returning to the corporation to work in his department. Shreateh expressed interest in the position but Holmes allegedly opposed any return and Shreateh was not hired.

-4-

## B.    Procedural History

The original complaint against Fannie Mae and Mark Holmes was filed by Shreateh pro se in Massachusetts Superior Court in Essex County. That complaint did not allege any specific statutory or constitutional violation and, although Fannie Mae was served with a copy of the complaint and summons on July 8, 2004, Holmes was not served at that time.

In its answer to the original complaint, Fannie Mae admits that 1) Shreateh was assigned to perform consulting services for Fannie Mae by Compaq, 2) his employment with Fannie Mae was terminated by Holmes and 3) Holmes later asked Shreateh to return his badge and leave the building. With respect to all other allegations contained in Shreateh's original complaint, Fannie Mae either denies them or states that it is without sufficient knowledge to admit or deny them.

Fannie Mae removed the case to this Court on diversity grounds on August 30, 2004. On October 25, 2004, Shreateh filed a Motion to Amend his Complaint to add claims under 42 U.S.C. §§ 1981 and 1983 against both Fannie Mae and Holmes. That motion was allowed on December 2, 2004.

On December 15, 2004, Shreateh filed a motion to dismiss voluntarily all counts in his First Amended Complaint that name Holmes as a defendant. As grounds for his motion, Shreateh concedes that this Court will be unable to exercise personal jurisdiction over Holmes. On December 22, 2004, Fannie Mae filed

-5-

a motion to dismiss all counts of the First Amended Complaint
that name Fannie Mae as a defendant, citing various grounds for
dismissal under Fed. R. Civ. P. 12(b)(6).

On January 10, 2005, Shreateh filed a motion to amend his
complaint a second time.[1]   In his proposed Second Amended
Complaint, Shreateh asserts claims 1) under 42 U.S.C. § 1981 for
creation of a hostile workplace, 2) under § 1981 for
discriminatory termination and 3) at common law for a) breach of
a contract of which Shreateh was a third party beneficiary, b)
breach of express contract, c) breach of implied contract and
d) intentional infliction of emotional distress.   Fannie Mae
filed its opposition to Shreateh's motion on January 19, 2005,
stating that Shreateh's motion should be denied as futile and
untimely with respect to scheduling deadlines.   Having considered
the memoranda in support of and opposition to the pending
motions, the Court resolves them as follows.

## II.  **Discussion**

Because Fannie Mae's Motion to Dismiss the First Amended
Complaint will be rendered moot if Shreateh's motion to file a
Second Amended Complaint is allowed, the Court turns to the
latter motion first.

---

[1] Apparently, the parties' motions were inadvertently deleted
from the pending motion list in mid-2005.   Neither party has
contacted the Court concerning the status of this case and
regrettably, resolution of the motions has been seriously
delayed.

## A.    Shreateh's Motion to Amend Complaint

### 1.    Legal Standard

According to Fed. R. Civ. P. 15, leave to amend will be "freely given when justice so requires" unless the amendment "would be futile or reward, *inter alia*, undue or intended delay". Resolution Trust Corp. v. Gold, 30 F.3d 251, 253 (1st Cir. 1994). Notwithstanding this liberal amendment policy, it is the more stringent "good cause" standard of Fed. R. Civ. P. 16(b), not the "freely given" standard of Rule 15(a), that governs motions to amend after a scheduling order is in place.  O'Connell v. Hyatt Hotels of P.R., 357 F.3d 152, 154-155 (1st Cir. 2004).  The "good cause" standard under Rule 16(b) emphasizes the diligence of the party seeking amendment rather than the "freely given" standard of Rule 15(a) which limits denial mostly to the bad faith of the moving party or prejudice to the opposing party. Id. at 155.

### 2.    Analysis

In light of the fact that a scheduling order was in place at the time Shreateh filed his motion to amend his First Amended Complaint, he asserts he has shown "good cause" to amend his pleadings under Fed. R. Civ. P. 16(b).  Specifically, he suggests that as the party seeking the amendment, his diligence merits allowing his motion to amend.  O'Connell 357 F.3d at 155.

In opposition, Fannie Mae first asserts that Shreateh's motion should be denied as untimely.  It notes that Shreateh's motion was filed ten days after the deadline set by this Court

-7-

for submission of motions to amend. While the role of deadlines in the trial process is important, this Court will not deprive Shreateh of the opportunity to assert all of his rights in this action due to a relatively minor procedural oversight. This Court, nonetheless, cautions both parties not to expect a pattern of leniency in the future.

Fannie Mae also suggests that the motion to amend should be denied because such an amendment would be futile. In support of that position, it attacks each new claim Shreateh introduces in his proposed Second Amended Complaint and argues that those claims would fail as a matter of law. That argument merits a more detailed analysis.

### a. Contract Claims

#### i. Choice of Law

Shreateh performed work for Fannie Mae in the District of Columbia but brought this action in the District of Massachusetts. Neither party has addressed the question of the choice of law governing the contractual claims and this Court must resolve the question before proceeding to evaluate those claims. Typically,

[w]hen facing a claim that does not arise under the Constitution or the laws of the United States, a federal court must apply the substantive law of the forum in which it sits, including that state's conflict-of-laws provisions.

Dykes v. DePuy, Inc., 140 F.3d 31, 39 (1st Cir. 1998)(citing Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). In

-8-

Massachusetts, the Supreme Judicial Court has adopted a "functional choice-of-law approach that responds to the interests of the parties, the States involved, and the interstate system as a whole." Bushkin Assoc. v. Raytheon Co., 393 Mass. 622, 631 (1985). The factors considered in choice-of-law determinations under Bushkin include: 1) the needs of the interstate and international systems, 2) the relevant policies of the forum, 3) the protection of justified expectations, 4) certainty, predictability and uniformity of result and 5) ease in the determination and application of the law to be applied. Id. at 632 (citing Restatement (Second) of Conflict of Laws § 6(2) (1971)).

The laws of Massachusetts and the District of Columbia are largely similar with respect to the claims at issue in this case. Consequently, there is little at stake regarding the interests of interstate systems, disparate forum policies or uniformity of result. However, the parties have given some indication of their expectations that Massachusetts law would govern the contract claims, inasmuch as Shreateh filed his complaint in the District of Massachusetts and Fannie Mae relies heavily on Massachusetts law in its opposition to Shreateh's motion to amend his complaint. In light of that presumed expectation and because Massachusetts can offer a more refined and extensive body of contract law, this Court will apply the laws of Massachusetts in evaluating the claims included in Shreateh's proposed Second

-9-

Amended Complaint. See Id. ("*in the absence of a choice of law
by the parties*, their rights are determined by the...law of the
state which...has the most significant relationship to [the]
transaction")(emphasis added).

## ii.  **Claim for Breach of Contract on Behalf of a Third Party Beneficiary**

With respect to Shreateh's proposed breach of contract claim
based on the assertion that he was a third party beneficiary to
the contract for computer services between Fannie Mae and Compaq,
Fannie Mae contends that Shreateh cannot claim third party
beneficiary status.  A third party beneficiary seeking to recover
under a theory of breach of contract is required to show that he
was an intended rather than an incidental beneficiary of that
contract.  See Shuras v. Integrated Project Servs., Inc., 190 F.
Supp. 2d 194, 203 (D. Mass. 2002); Orell v. Umass Mem'l Med.
Ctr., Inc., 203 F. Supp. 2d. 52, 67-68 (D. Mass 2002)(dismissing
a third party beneficiary claim because it failed to allege that
a consulting contract was intended to benefit an employee of one
of the contracting parties).  Shreateh has not alleged in his
complaint that he was an intended beneficiary of the contract
between Compaq and Fannie Mae.

Moreover, "Massachusetts courts do not confer intended
beneficiary status when a contract's terms do not provide for the
benefits of performance to flow directly to the third party."
See Shuras, 190 F.Supp. 2d. at 204 (citing Pub. Serv. Co. of N.H.

v. Hudson Light and Power Dep't, 938 F.2d 338, 341 (1st Cir. 1991)). Shreateh was paid for his work by Computer Merchants, a corporation that was not a party to the contract between Compaq and Fannie Mae. Any benefit Shreateh received for his work came from his employment with Computer Merchants and did not flow directly from the contract between Compaq and Fannie Mae. Accordingly, his proposed claim for breach of contract as a third party beneficiary would be futile.

### iii. Claim for Breach of Express Contract

Fannie Mae also contends that Shreateh cannot sustain a claim for breach of express contract as a matter of law. Shreateh's bare asseveration that an express contract of any sort existed between him and Fannie Mae is insufficient to sustain his claim. See, e.g., Lewis v. Holy Spirit Ass'n for Unification of World Christianity, 589 F. Supp. 10, 13 (D. Mass 1983). Shreateh has not attempted to establish the requisite elements for the existence of a contract, i.e., offer, acceptance and consideration. He has not shown, nor even asserted, that any of those foundational aspects of a contractual agreement ever existed between him and Fannie Mae. Accordingly, his proposed claim would be futile.

### iv. Claim for Breach of Implied Contract

Fannie Mae also suggests that Shreateh's claim for breach of implied contract must fail as a matter of law. As with respect to his claim for breach of express contract, Shreateh has offered

no evidence, averments or basis for establishing the existence of an implied contract. Shreateh has not even stated whether the implied contract which he contends Fannie Mae breached was implied in fact or in law.

If Shreateh were to assert that the implied contract allegedly breached by Fannie Mae was implied in fact, he would still need to establish offer, acceptance and consideration.

As other courts in this district have found, the elements of an express and an implied contract are the same...the implied contract is implied from the acts of the parties and other circumstances showing an intent to contract.

1997 WL 136249 *6 (D. Mass.)(citing Kirk v. United States, 451 F.2d 690, 695 (10th Cir. 1971)). Once again, Shreateh has made no allegations supporting the existence of the necessary elements of a contractual agreement between him and Fannie Mae.

Furthermore, if Shreateh's claim for breach of implied contract relied on the existence of a contract implied in law, it would also fail. Contracts implied in law require unjust enrichment. Id. at 6 (citing 1 Corbin on Contracts, § 1.20 at 62-66). Shreateh could not establish unjust enrichment on the part of Fannie Mae even if he had included allegations to that effect in his complaint. Fannie Mae rendered due consideration for Shreateh's services to Compaq pursuant to their contract. In return, they received consideration in the form of Shreateh's computer services. Shreateh received a salary from Computer Merchants. No party was unjustly enriched in this arrangement.

-12-

Accordingly, Shreateh's claim for breach of contract implied in law would also be futile.

### b.  Intentional Infliction of Emotional Distress Claim

Fannie Mae also argues that allowing Shreateh to add a claim for intentional infliction of emotional distress would be futile. To support its position, Fannie Mae contends that any claims against Fannie Mae in tort would be barred by the exclusivity provisions of the District of Columbia Workers' Compensation Act ("WCA").  See D.C. Code § 32-1504(a).  Fannie Mae suggests that because Shreateh has alleged in his complaint that he is a borrowed servant of Fannie Mae, he has conceded that the WCA applies to him.

That argument is unavailing because even in the district whose law Fannie Mae cites, it is well-settled that in order for an employee to be considered a borrowed servant, "there must be a contract of hire, express or implied, between the employee and the...borrowing employer."  Union Light & Power Co. v. D.C. Dep't of Employment Serv., 796 A.2d 665, 667 (D.C. 2002)(citing Thompson v. Grumman Aerospace Corp., 585 N.E.2d 355, 357 (1991)). Fannie Mae has gone to great lengths to demonstrate that no contract, express or implied, existed between it and Shreateh for the purposes of Shreateh's proposed breach of contract claims. Fannie Mae may not now inconsistently argue that for the purposes of Shreateh's tort claim, such a contract did exist.

If Massachusetts workers' compensation law applies instead,

the result is the same. Massachusetts workers' compensation law also requires the existence of a contract of hire for a person to be considered an "employee" for the purposes of workers' compensation. See M.G.L. c.152 § 1(4). Because no express or implied contract existed between Shreateh and Fannie Mae, his tort claim is not barred by the exclusivity provisions of workers' compensation law. Accordingly, such a claim would not be futile.

### B. Claims Pursuant to 42 U.S.C. § 1981

Shreateh also seeks to incorporate claims under 42 U.S.C. § 1981 for workplace discrimination. In his First Amended Complaint, Shreateh brought one claim under § 1981 for alleged racial, religious, and ethnic discrimination. In his proposed Second Amended Complaint, Shreateh includes two § 1981 claims: 1) for discriminatory termination and 2) for hostile work environment. While not addressed in Fannie Mae's opposition to Shreateh's motion to amend his First Amended Complaint, Fannie Mae does assail those claims in its motion to dismiss Shreateh's First Amended Complaint.

Shreateh responds that he has standing to sue under § 1981 based on the finding of the First Circuit Court of Appeals that the language of § 1981 provides protection against racial discrimination to both employees and independent contractors. See Danco v. Wal Mart Stores, Inc., 178 F.3d 8, 14 (1st Cir. 1999). The First Circuit cites the House Report accompanying the

-14-

original legislation creating § 1981, which states that "The committee intends this provision to bar all race discrimination in *contractual relations.*" H.R.Rep. No. 102-40(I), at 92, reprinted in 1991 U.S.C.C.A.N. 549, 630 (emphasis added).

This Court has found no contractual relationship between Shreateh and Fannie Mae. The First Circuit has stated that

> Nothing in section 1981 provides a personal claim, so far as its language is concerned, to one who is merely *affiliated*- as an...employee- with a contracting party that is discriminated against by the company that made the contract.

Danco, 178 F.3d at 14 (emphasis in original). Accordingly, Shreateh's claims under § 1981 in his proposed Second Amended Complaint would be futile.

## ORDER

In accordance with the foregoing, Shreateh's Motion for Voluntary Dismissal (Docket No. 22) is **ALLOWED.** Shreateh's Motion to Amend his First Amended Complaint (Docket No. 24) is, insofar as he has included a claim for intentional infliction of emotional distress, **ALLOWED** but is, in all other respects, **DENIED.** Fannie's Mae's motion to dismiss the First Amended Complaint (Docket No. 23) is **DENIED AS MOOT.**

**So ordered.**

Nathaniel M. Gorton

Nathaniel M. Gorton
United States District Judge

Dated May 2, 2006.